# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| LISA ANNE HARTMAN,<br>    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br>    Defendant. | )<br>)<br>)<br>)   CAUSE NO.: 2:13-CV-410-JEM<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lisa Anne Hartman on November 13, 2013, and a Memorandum in Opposition to Secretary's Decision Denying Plaintiff's Claim for Benefits and Request for Remand [DE 17], filed by Plaintiff on May 22, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 4, 2014, the Commissioner filed a response, and on September 29, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On November 22, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") and for supplemental security income ("SSI") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on August 8, 2010. Plaintiff's application was denied initially and upon reconsideration. On November 2, 2012, Administrative Law Judge ("ALJ") Angelita Hamilton held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On December 17, 2012, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in substantial gainful activity since August 8, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant had severe impairments: asthma, anxiety, depression, bipolar disorder, and attention deficit hyperactivity disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform less than light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant is limited to occasional exposure to wetness and humidity, excessive noise, vibration, and environmental irritants such as fumes odors, dusts and gases, and can never be exposed to hazards. The claimant is limited to simple, routine, and repetitive tasks and can only perform low stress work, defined as occasional interaction with coworkers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.2565 and 416.965).

7. The claimant was 43 years old, defined as a younger individual age 18-49 on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is not disabled (20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1569,

1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability as defined in the Social Security Act from August 8, 2010, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

On October 15, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

Plaintiff has been diagnosed with cardiovascular abnormalities including mitral valve regurgitation, an irregular heartbeat, and sinus tachycardia; abdominal problems including gastroesophageal reflux disease (GERD), appendicitis treated with an appendectomy, removal of her gallbladder; other physical ailments including allergic rhinitis and chronic migraine headaches; and mental disorders including attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD) generalized anxiety, major depression, and bipolar disorder.

Dr. Samir Gupta, a psychiatrist, treated Plaintiff once or twice a month beginning in October 2009. He completed a Report of Psychiatric Status in May 2011, stating that Plaintiff had been diagnosed with major depression recurrent, ADHD, and bipolar disorder, and suffered from cardiac issues, chronic headaches, and GERD. He reported that Plaintiff's illness caused her to stop working in September 2008 and that she tried to return to work but was unable to continue because of her medical illnesses. Dr. Gupta assessed Plaintiff's remote memory as "good" based on her

3

answers to his questions but he noted that she had severe difficulties with simple calculations and was easily distracted. He noted that Plaintiff was able to complete daily activities, but had severe difficulties with memory and comprehension and was unable to stay focused.

Dr. Gupta also completed two narrative reports for Plaintiff's attorney indicating that Plaintiff suffered from chronic PTSD, bipolar disorder, and ADHD. He stated that she had very unstable moods and severe anxiety, and that she self-mutilated when under stress.

On September 25, 2012, Dr. Gupta completed a Mental Medical Source Statement indicating that Plaintiff suffered from a variety of symptoms as a result of her bipolar disorder, chronic PTSD, and ADHD. He stated that Plaintiff had suicidal ideation and a history of self-mutilation. Dr. Gupta reported that Plaintiff suffered a marked loss in ability to: maintain concentration for extended periods; maintain regular attendance and punctuality; work in proximity to others without being distracted; and complete a normal workday without interruptions from her psychological symptoms. He also reported that Plaintiff had a marked loss of ability to interact appropriately with the public, to accept instructions and respond to criticism, to get along with coworkers, to respond appropriately to changes in a routine work setting, and to travel in unfamiliar places or use public transportation. Dr. Gupta reported that Plaintiff had marked difficulties in maintaining social functioning, frequent deficiencies in concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and repeated episodes of deterioration or decompensation in work-like settings. He opined that Plaintiff would be absent from work more than three times per month because of her impairments or treatment.

In May 2011, Craig A. Nordstrom, Psy.D., prepared a consultative mental evaluation at the request of the state agency. At the evaluation, Plaintiff had difficulty with simple calculations and

4

could not perform serial sevens. His diagnostic impressions were of generalized anxiety disorder with panic attacks, ADHD and recurrent major depressive disorder

On May 9, 2011, a state agency psychologist reviewed the record as it existed at that time and concluded that Plaintiff had moderate limitations in the ability to maintain attention and concentration, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods, and to respond appropriately to changes in the work setting.

On March 28, 2011, Plaintiff had an appointment with a neurologist. He noted that she had been suffering from headaches for more than thirty years, accompanied with lightheadedness and vertigo. After testing in April 2011, he diagnosed her with dizziness and headaches. One of the tests he ordered was a CT scan that had negative result.

Plaintiff's primary care physician, Dr. Skarzynski, completed a Medical Source Statement on December 13, 2011. He reported that Plaintiff came in for office visits about once per month, and listed her diagnoses as sinus tachycardia, mitral valve regurgitation, migraines, GERD, anxiety, allergic rhinitis, bipolar disorder, ADHD, and depression. He opined that Plaintiff's pain was frequently severe enough to interfere with her attention and concentration and that she was severely limited in her ability to deal with work stress. Dr. Skarzynski wrote that Plaintiff would only be able to sit for about fifteen minutes in a working position before needing to walk around and would only be able to walk or stand continuously for about fifteen minutes before needing to sit. He opined that Plaintiff was able to sit for about four hours total and stand or walk for about two hours total during an eight hour workday. Plaintiff could frequently lift less than 11 pounds, occasionally lift 11-20 pounds, and never lift more than 20 pounds. She must avoid all exposure to environmental irritants.

5

Dr. Skarzynski stated that Plaintiff's impairments were likely to cause bad days and that she was likely to be absent from work more than three days per month as a result of her impairments or treatment. He wrote that Plaintiff had all of these restrictions since at least August 8, 2010.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may

6

reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also

7

prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four,

whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ erred in rejecting the opinions of Plaintiff's treating physicians, in her evaluation of Plaintiff's mental impairments, and in failing to find that Plaintiff's migraine headaches are a severe impairment. The Commissioner argues that the ALJ's opinion was supported by proper evidence.

**A.     Migraine Headaches**

Plaintiff argues that the ALJ failed to properly consider Plaintiff's migraine headaches at Step Two. The ALJ concluded that Plaintiff's migraines were not a severe impairment because she had a negative CT scan, and therefore did not consider the limitations caused by those impairments in determining her ability to work.

Plaintiff points to numerous indications in the record of her 30-year history of migraines accompanied by side effects including dizziness, nausea, and lightheadedness. The ALJ did not address any of this evidence in her opinion, but simply stated that because the CT scan was negative, Plaintiff's headaches were not a severe impairment. As Plaintiff argues, a negative result on a test for one possible cause of her headaches does not mean that she does not suffer from them. The ALJ's decision completely ignores relevant medical evidence in the record, an error requiring remand. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

## B. Treating Physicians

Plaintiff argues that the ALJ improperly rejected the opinions of two of Plaintiff's treating physicians, both of whom completed medical source statements indicating that Plaintiff suffered disabling limitations from her mental and medical impairments.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."); *Hamilton v. Colvin*, 525 F. App'x 433, 438-39 (7th Cir. 2013) (remanding for failure to address conflict between the RFC and physicians' opinions about the plaintiff's capacity); SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996) (requiring the ALJ to "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt*, 395 F.3d at 744.

### 1. Treating Psychiatrist

Plaintiff argues that the ALJ erred in failing to give great weight to the opinion of treating

psychiatrist Dr. Samir Gupta or to recontact him about Plaintiff's impairments. Dr. Gupta, a psychiatrist, treated Plaintiff one to two times per month beginning in 2009. He completed a Report of Psychiatric Status at the request of the SSA, two narrative reports sent to Plaintiff's attorney, and a Medical Source Statement. He noted that Plaintiff suffered from PTSD, bipolar disorder and ADHD, and had severe difficulties with anxiety, depression, and maintaining her attention span. He anticipated that Plaintiff would be absent from work more than three times per month due to impairments or treatment and that she has marked difficulties in maintaining social functioning, frequent deficiencies in concentration, persistence, and pace, and repeated episodes of deterioration or decompensation in work or work-like settings.

The ALJ only mentioned the Medical Source Statement completed by Dr. Gupta and did not refer to either of the narrative reports of her ability or the Report of Psychiatric Status he completed for the SSA. As for the Medical Source Statement completed by Dr. Gupta that she did address, the ALJ discounted Dr. Gupta's opinion as inconsistent with the record and his own treatment notes. However, Dr. Gupta's opinions have support from the record, including the report of examining psychologist Craig Nordstrom, who diagnosed Plaintiff with generalized anxiety disorder, ADHD, and major depressive disorder, with a history of cutting and some troubles with recall. Furthermore, the treatment notes the ALJ identifies as "inconsistent" are the notes from a single visit in 2010, and the ALJ only refers to a few of the more unremarkable notes from that visit, ignoring Dr. Gupta's notation that Plaintiff has experienced little improvement, has poor impulse control, and suffers from a number of mental health disorders. Reference to a few lines of treatment notes from a single examination is not a "sound explanation" of the reason to give little weight to the opinion of Plaintiff's treating mental health specialist.

11

Furthermore, the ALJ's reliance on a few notes from a single visit as evidence that Plaintiff was not experiencing limitations is particularly concerning. The Seventh Circuit Court of Appeals has warned against "cherry-picking" medical or mental health evidence, particularly because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). In that case, the Seventh Circuit said that

> [t]he ALJ ought to have analyzed whether [the treating psychiatrist]'s mental-residual-functional-capacity questionnaire was consistent with her treatment notes as a whole. Even if we accept the [single] treatment note as evidence that [the plaintiff] enjoys a few 'good days,' that evidence still offers no support for the ALJ's finding that her mental illness does not prevent her from holding a job.

*Id.* As the Seventh Circuit Court has explained, "[t]he very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)*; see also Punzio*, 630 F.3d at 710 ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'") (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

In this case, the ALJ erred in discounting Dr. Gupta's treating source opinion without sound explanation and without addressing all of his opinion statements on Plaintiff's limitations. Instead of giving great weight to the treating specialist and his multiple consistent reports of Plaintiff's

mental limitations, the ALJ relied on the opinion of a state agency consultant who did not examine Plaintiff but merely reviewed her mental health records on May 9, 2011 - well before much of the mental health evidence was added to the record. *See Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("[T]the ALJ has a duty to develop a full and fair record. Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence."); SSR 96-2p at *4 ("[I]n some instances, additional development required by a case – for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings – may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record.").

2. Primary Care Physician

Plaintiff also argues that the ALJ improperly rejected the opinion of treating physician Dr. Skarzynski, Plaintiff's primary care physician.

The ALJ stated that she afforded Dr. Skarzynski's opinion little weight as "grossly inconsistent with the record." She recognized that he was a treating source, but did not mention that he has treated Plaintiff approximately every other month for a number of ailments. The only inconsistency the ALJ identified was Dr. Skarzynski's opinion that Plaintiff was unable to sit for longer than fifteen minutes, which was contradicted by Plaintiff's ability to sit for longer than that amount of time at the hearing. The ALJ did not identify any other inconsistencies, and other medical evidence in the record supports his diagnoses of heart problems, migraines, GERD, anxiety, allergic rhinitis, bipolar disorder, ADHD, and depression. As with the opinion of Dr. Gupta, discussed

13

above, the ALJ was required to consider the opinion of Plaintiff's treating primary care physician as to Plaintiff's limitations and to do more than cite a single instance of contradiction as justification for disregarding it.

Furthermore, it is not apparent what evidence the ALJ did rely on in determining Plaintiff's RFC. The ALJ gave "little weight" to the opinion of Dr. Skarzynski and only "some weight" to the opinion of the Agency medical consultants who reviewed the medical evidence in the record prior to July 13, 2011. The ALJ concluded that the consultants' opinion was "somewhat consistent with the record" but added additional limitations "in light of new evidence," without identifying what new evidence that was or how it affected Plaintiff's RFC. In addition to improperly discounting the weight of Plaintiff's treating doctors and ignoring evidence in the record, the ALJ failed to draw a logical bridge between the evidence and her conclusions. *See, e.g., O'Connor-Spinner*, 627 F.3d at 618. This case must be remanded for a new RFC and a full consideration of all the medical and mental health evidence in the record, including a proper evaluation of the weight to be given to Plaintiff's treating doctors.

On remand, the ALJ is also reminded of the requirements laid out in SSR 96-5p addressing medical source opinions: "opinions from any medical source on issues reserved to the Commissioner [such as RFC] must never be ignored," and an ALJ must "make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear." SSR 96-5p, at *2. Plaintiff also argues that the ALJ failed to properly evaluate Plaintiff's impairments under the appropriate Listings. Because it is apparent that the ALJ did not correctly address the medical evidence in the record, the Court will not address her specific arguments about how that medical evidence applies to the Listings, but

reminds the ALJ on remand of the need to properly evaluate all of Plaintiff's impairments, including considering whether all of the mental health evidence, properly weighed, indicates that Plaintiff has satisfied the Listings.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Memorandum in Opposition to Secretary's Decision Denying Plaintiff's Claim for Benefits and Request for Remand [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 26th day of March, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record